UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
DR. RICHARD G. GRANT,                                             :
:
                Plaintiff,                       :
:     07 Civ. 5534 (GEL)
     -v-                                                         :
:     **OPINION AND ORDER**
TEACHER'S RETIREMENT SYSTEM OF THE                                :
CITY OF NEW YORK, NEW YORK CITY                                   :
OFFICE OF THE ACTUARY,                                            :
:
                Defendants.                      :
:
------------------------------------------------------------------x

Richard G. Grant, pro se.

Karen J. Seemen, Corporation Counsel of the City of
New York, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

     Dr. Richard G. Grant, a former teacher and assistant principal in the New York City ("NYC") public school system, brings this pro se action alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., by the Teachers Retirement System of the City of New York ("TRS") and the New York City Office of the Actuary ("Actuary").[1] Plaintiff complains essentially of the failure of TRS to credit him with

---

[1] TRS provides and administers the pension system for educators who work for the New York City Department of Education, the City University of New York, and participating New York City charter schools. (D. Mem. 3.) The Actuary provides all actuarial services to the various New York City pension funds, including TRS. (Id.) Although it is not entirely clear from plaintiff's complaint what role, if any, the Actuary played in the purportedly unlawful actions of TRS, the Actuary does not object to its inclusion as a defendant in this action. (Id. at 5 n.3)

certain "bonus" time of service credit towards his pension. TRS moves to dismiss the complaint on the ground that plaintiff's allegations are time-barred and, in any event, fail to state a claim. The motion will be granted.

## BACKGROUND

For purposes of this motion to dismiss, the Court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Moreover, because plaintiff is unrepresented by counsel, the Court must construe those allegations liberally. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (noting that when party proceeds pro se, court must "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). The following account of the facts is drawn from the allegations of the complaint, which consists of a form complaint, a brief handwritten narrative from the plaintiff, and a number of attached documents, including the discrimination charge filed by plaintiff with the Equal Employment Opportunity Commission ("EEOC").

Grant was for almost thirty-seven years an employee of the NYC Department of Education, having served as a teacher and assistant principal. (See Seemen Decl. Ex. E.[2]) On March 16, 2001, at age 61, he filed a retirement application, declaring an intention to retire as of August 31, 2001. (Id. Ex. B.). The March 2001 application was rejected by TRS because it was filed more than 90 days in advance of the proposed retirement date. (Id. Ex. D.) Subsequently,

---

[2] Because the exhibits annexed to the July 20, 2007, Declaration of Karen J. Seemen were relied upon and incorporated by reference in plaintiff's complaint, the Court may consider them in deciding defendants' pending motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Grant filed a second retirement application, dated May 23, 2001, that was given effect by TRS. (Id. Ex. C.) That notice, however, changed the effective retirement date to June 30, 2001. (Id.)

The change of retirement date had an unfortunate consequence. In July 2000, the New York State legislature approved an incentive provision encouraging teachers eligible for retirement in the fall of 2000 to extend their service for another school year. See 2000 N.Y. Laws Ch. 126 § 2 (codified at N.Y. Retire. & Soc. Sec. Law § 911(a)(2) (McKinney 2007)).[3] In effect, teachers who extended their service until June 30, 2001, would receive a specified bonus credit toward the years of service on which their pension would be based. See id. It is a fair inference from the complaint and from Grant's papers responding to the motion to dismiss that Grant specifically elected to work another year before retiring in order to qualify for this incentive credit. However, the governing statute clearly provides that in order to be eligible for the credit, a teacher must work through June 30, 2001, and retire no earlier than July 1, 2001. See id. (requiring as a condition of eligibility for incentive plan that employee work "up to and

---

[3] The incentive provision provides, in relevant part:

> An eligible member who is a member of the New York city teachers' retirement system (i) with a date of membership prior to July twenty-seventh, nineteen hundred seventy-six and (ii) who was in active service on October first, two thousand and (A) continued in active service up to and including June thirtieth, two thousand one, shall receive one-twelfth of a year of additional retirement credit for each year of retirement credit for service rendered as of the date of retirement, vesting, transfer or death, if applicable, up to a maximum of one year of retirement credit . . . .

N.Y. Retire. & Soc. Sec. Law § 911(a)(2).

including June thirtieth, two thousand one"). By the literal terms of the provision, Grant retired one day too early to receive the incentive credit.[4]

TRS accepted Grant's notice of retirement, and on November 5, 2001, provided him with a written calculation of his pension benefits. (Seemen Decl. Ex. E.) That notice expressly declined to award him bonus credit for his additional year of service. (See id. (crediting Grant with "0 yrs. 0 mths. 0 days" under the incentive provision)). Grant promptly wrote TRS to protest the calculation. On December 13, 2001, TRS rejected his inquiry, noting that the incentive plan specifically applied to teachers "who were in service . . . through June 30, 2001, and whose retirement date is July 1, 2001 or later." (Id. Ex. F.) TRS informed Grant that "[y]ou were ineligible [for the bonus credit] because your retirement date was June 30, 2001, one day short of the qualifying date." (Id.) Grant apparently responded by seeking to modify his retirement date, but TRS rejected that effort as well, noting that such a change could be made only until one day before the effective retirement date. (Id. Ex. G.)

On October 2, 2006, Grant filed a charge of age discrimination with the EEOC, alleging that TRS was obligated but failed to notify him in advance of his retirement that he should change his retirement date to be eligible for the additional credit, and that TRS then discriminatorily declined his request to modify his retirement date after he had retired. (See Compl., EEOC charge) Following receipt of a right-to-sue letter from the EEOC, Grant brought this action on June 11, 2007.

---

[4] By a further ironic turn, July 1, 2001, was a Sunday. Thus, had Grant chosen to retire a day later, he would not even have had to work another day.

**DISCUSSION**

If the allegations of the complaint are true, as must be assumed for purposes of this motion, Grant has lost a substantial amount of retirement income as a result of a minor mistake in electing to retire one day too early, combined with the determination of TRS to apply the governing rules literally. It appears that Grant could have secured a larger pension, without working a single additional day and without conferring any additional benefit whatsoever on the City of New York or its schoolchildren, simply by writing July 1 rather than June 30 on his retirement application form. By working an extra year, he had fulfilled the substantive terms of the incentive program provided by the New York legislature, and all that kept him from securing the benefits of that program in return was his failure to appreciate that working "up to and including June thirtieth, two thousand one," N.Y. Retire. & Soc. Sec. Law § 911(a)(2), meant retiring on July 1, not on the last day of June. Although the mistake was his own, the changes of date on his successive retirement application forms indicate that, had he been properly advised of the terms of the governing statute, he could and would have qualified for the additional pension benefits. Although the TRS decision appears to have been a technically correct application of the terms of the governing statute, substantial justice would seem to entitle Grant to the additional benefits he seeks.

This Court, however, does not have jurisdiction to review TRS decisions, or to award New York City retirees whatever benefits the Court thinks fair. A federal court has the authority to adjudicate only claims that are properly within its jurisdiction. Grant invokes two federal statutes, the ADEA, which prohibits age discrimination in employment, and ERISA, which

regulates certain employee benefit plans.  Whether or not the decision of TRS appears fair, the facts do not make out an actionable violation of either of those statutes.

I.  Grant's ADEA Claim is Time-Barred

The ADEA requires that as a prerequisite to filing any lawsuit, the complainant must file an administrative charge with the EEOC at least 60 days prior to initiating an ADEA suit in federal court.  See 29 U.S.C. § 626(d).  In addition, if the purportedly discriminatory act occurs in a so-called "deferral state" — i.e., a state (such as New York) with its own age discrimination law and remedial agency — the charge must be filed within the earlier of 300 days after the alleged unlawful acts occurred or thirty days after the complainant receives notice of the termination of state law proceedings.  See 29 U.S.C. § 626(d); id. § 633(b); see also Holowecki v. Federal Exp. Corp., 440 F.3d 558, 562 n.1 (2d Cir. 2006) (noting that New York is a "deferral state").  Failure to comply with these time limitations in bringing the administrative charge bars any subsequent action in federal court.  See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 239 (2d Cir. 2007).  An employment discrimination claim "accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000).  Ordinarily, "the limitations period begins to run on the date that the employer gives definite notice of [the allegedly discriminatory] decision to the employee."  Id.; see Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (noting that employment discrimination claims accrue on date that employee "knows or has reason to know of the injury which is the basis of his action").

Grant's complaint is not particularly clear as to the precise nature of the discrimination he alleges.  He asserts two instances of discrimination in ¶ 4 of his form complaint:  "[f]ailure to

hire me" and "[o]ther acts," specifying "Employment Retirement Income Security Act." He then asserts that to his best recollection, "the alleged discriminatory acts occurred on December 13, 2001" (Compl. ¶ 5), although he also alleges that defendants are "still committing these acts against me" (id. ¶ 6). In setting out the narrative of his case, he contends that he "was never officially informed of the July 1, 2001 filing date," and that when he "discovered th[e] error, on November 11, 2001," he offered, on an unspecified date, "to 'unretire' . . . but was denied owing to my age." (Id. ¶ 8.)

To the extent that Grant's complaint of age discrimination is based on the denial of the bonus incentive credit, Grant became aware of that denial on or about November 5, 2001, when he was first advised of the calculation of his pension amount and credited with "0 yrs. 0 mths. 0 days" of service under the bonus incentive provision. (See Seemen Decl. Ex. E.) To the extent Grant's claim alleges dereliction on the part of TRS in failing to advise him of the need to select a retirement date later than June 30, 2001, that claim began to accrue no later than December 13, 2001, when TRS informed him that he was ineligible for the incentive benefit because his retirement date was "one day short of the qualifying date."[5] (Id. Ex. F.) Finally, to the extent

---

[5] Indeed, Grant's claim based on TRS's purported dereliction may have accrued even earlier. Under the regulatory scheme, Grant had until one day prior to his retirement date of June 30, 2001, to make a change to that date. (Seemen Decl. Ex. G.) TRS's failure to advise Grant of the need to select a different retirement date thus occurred no later than June 29, 2001. The question of when Grant knew or should have known of TRS's alleged dereliction, however, is a more difficult inquiry that the Court need not reach. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 n. 7 (2002) ("There may be difficult circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time beings to run when the injury occurs as opposed to when the injury reasonably should have been discovered."). Even assuming that Grant could not have reasonably discovered TRS's purported dereliction until he received the December 13, 2001, letter from TRS, he did not file an EEOC charge until almost five years later, well outside of the 300-day deadline under the ADEA.

that Grant's offer to "unretire" relates to his request to modify his retirement date, he was advised of the rejection of that proposal on or about October 27, 2003. (See id. Ex. G.) However, Grant did not file a charge of age discrimination with the EEOC until October 2, 2006, long after the expiration of the 300-day limitations period. (See Compl. ¶ 10 and attached EEOC charge.)

Although Grant alleges in his complaint that the acts of discrimination continue through the date of the filing of this action in 2007 (Compl. ¶ 6), and although his EEOC charge asserts that the most recent episode of discrimination took place on "9/29/06" (see Compl., EEOC charge), nothing in the complaint or the EEOC charge refers to any event post-dating the denial of his request to "unretire." Indeed, the EEOC charge does not refer to any grievance other than the dispute over the calculation of his retirement credit. Similarly, beyond referring to his claim that the discriminatory acts against him are "still existing and continuing," Grant's brief opposition to the motion makes no mention of any concrete action taken by TRS after 2003. (P. Mem. at 1.)

Construed as liberally as possible, the complaint and Grant's response to the motion could be taken to argue that because his pension continues to be less than he believes it should be, and because TRS continues to refuse to recalculate the amount of credit, the allegedly discriminatory acts constitute a continuing offense. Unfortunately for Grant, the Supreme Court recently rejected just such a claim in Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2007), holding that claims of discriminatory decisions that affect an employee's rate of pay must be based, for purposes of the limitations period, on the discrete acts of discrimination that caused the lower pay, and may not be perpetuated by the "adverse effects" stemming from the

continuation of the resulting lower pay rate. Id. at 2169. The same is true here: Grant was harmed when TRS calculated his pension payment, or at the latest when it rejected his request to modify his date of retirement, and he was required by the ADEA to complain of that harm within 300 days of its occurrence. That the effect of the allegedly discriminatory actions continues to the present, in the form of lower pension payments, does not revive or extend his claim.

Finally, the complaint could also be construed to allege that Grant remains willing to return to work for a day, and thereby to alter the date of his retirement in a way that arguably could make him eligible for the incentive credit, but that defendants refuse to hire him because of his age. As a matter of abstract principle, a claim of refusal to hire based on age would assuredly state a claim under the ADEA. Here, however, that claim fails for several reasons. First, the EEOC charge, which is a necessary predicate for filing an action here, nowhere mentions any such refusal to rehire. Second, even assuming that a request for a purely formal "rehiring" that would amount to nothing more than a change in Grant's official retirement date could be treated as an application for employment, Grant does not and did not seek employment from the named defendants, TRS and the Actuary, but rather from the Department of Education. The defendants named in this lawsuit, as a matter of law, have no authority to hire or rehire Grant as a teacher or assistant principal.[6] Third, nowhere in his complaint or in his opposition papers does Grant identify any occasion — other than his 2001 offer to "unretire" — on which he applied for, or was refused, employment by anyone. Thus, any attempt to characterize his claim as a refusal to

---

[6] Grant suggests that defendants should have "forwarded" his request for employment to the Department of Education with a recommendation "to consider hiring [him] for an additional day." (P. Mem. 1.) Although forwarding Grant's request would perhaps have been a courteous gesture, defendants' failure to do so does not constitute a refusal to hire or rehire.

hire suffers from the same defects as any other way of characterizing his complaint: the relevant decisions affecting his status were made, and were made known to him, in 2001 or at the latest 2003. If Grant believed that these decisions were made illegitimately on the basis of his age, he was required to complain of such discrimination within 300 days. His failure to do so dooms his ADEA claim.

II.     Grant Fails to State a Claim Under ERISA

Although Grant chose to file an EEOC charge alleging discrimination on the basis of age, and then chose to file his complaint on a form that charges employment discrimination under the ADEA, the "crux" of his dispute with defendants, as his Complaint candidly acknowledges (Compl. ¶ 8), is not discrimination but rather the calculation of his retirement benefits and the alleged failure of TRS to properly notify him of the need to select a retirement date later than June 30, 2001, in order to avail himself of the incentive credit. Grant does not articulate any way in which TRS's action could be characterized as age discrimination; he does not allege that younger retirees were treated better by TRS than he was, and indeed, it is unclear that any younger employees could be similarly situated with respect to the incentive program. His complaint more naturally is read as alleging an employer's or pension plan's failure properly to notify employees or plan participants of the terms of the plan. The statute that concerns itself with such failures is ERISA – specifically, the disclosure requirements of Title I of that statute. See 29 U.S.C. §§ 1021-22, 1024. Grant's complaint, although characterized as one of discrimination, appears specifically to invoke ERISA. (See Compl. ¶ 4; see also id. EEOC charge.) Construed liberally, then, this pro se complaint could be taken to allege a violation of that statute. Any such claim must fail, however, because governmental pension benefit plans are

expressly exempt from the requirements of Title I of ERISA. See 29 U.S.C. § 1002(32); id. § 1003(b)(1); Gualandi v. Adams, 385 F.3d 236, 242 (2d Cir. 2004) ("Title I of ERISA specifically excludes from its coverage any employee benefit plan that is a governmental plan.").

## CONCLUSION

Plaintiff plausibly claims that he has been treated shabbily by the City for whose schoolchildren he worked for almost thirty-seven years. He arguably earned the enhanced pension benefits that were held out to him as an incentive not to retire a year earlier, and was denied those benefits because of a technical blunder in filling out his retirement form. A reasonable person could well conclude that the decent thing for TRS to do would be to overlook the error, or to seek a way to rectify it. But the acts complained of occurred in 2001 and 2003, and plaintiff's (in any event highly strained) effort to couch defendants' stingy response to his situation as a violation of federal anti-discrimination law came far too late to satisfy the applicable statute of limitations. His complaint of age discrimination must be dismissed as time-barred, and any complaint under ERISA must be dismissed for failure to state a claim.

Accordingly, defendants' motion to dismiss is granted.

SO ORDERED.

Dated: New York, New York
October 25, 2007

_____
GERARD E. LYNCH
United States District Judge